Isaac P. Hernandez (SBN 025537)
Hernandez Law Firm, PLC
5330 N. 12th St.
Phoenix, Arizona 85014
Tel:   602.753.2933
Fax:   855.592.5876
Email: isaac@hdezlawfirm.com
*Attorney for Christopher Oliva*

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Christopher Oliva<br><br>Plaintiff,<br><br>vs.<br><br>Pueblo Mechanical and Controls, Inc., Maricopa County, and Dustin Wood, an individual,<br><br>Defendant. | Case No. _____<br><br>**COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

**COMES NOW** Plaintiff Christopher Oliva ("Plaintiff") in support of his Complaint against Defendant Pueblo Mechanical and Controls, Inc. ("Defendant PMC"), Defendant Maricopa County ("Defendant County"), and Defendant Dustin Wood ("Defendant Wood"), and hereby alleges as follows:

## NATURE OF THE ACTION

1. Plaintiff asserts claims against Defendant PMC under the Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e, *et seq.* ("Title VII"), and 42 U.S.C. §1981 ("§1981"), for injuries resulting from Defendant PMC's unlawful conduct, including but not limited to: (1) discriminating against Plaintiff because of his race and/or ancestry (Hispanic), and/or National Origin, (2) subjecting Plaintiff to unlawful harassment and a hostile work environment, and (3) retaliation.

2. Plaintiff asserts claims against Defendants County and Dustin under §1981

and 42 U.S.C. §1983 for injuries resulting from their unlawful conduct, including but not limited to: (1) discriminating against Plaintiff because of his race and/or ancestry (Hispanic), (2) subjecting Plaintiff to unlawful harassment and a hostile work environment, and (3) retaliation.

3. Plaintiff seeks back pay, front pay, compensatory damages, punitive damages, attorney's fees and costs, and such further relief as the Court deems just and proper under the circumstances.

**PARTIES**

4. Plaintiff Christopher Oliva has at all times relevant to this matter been an resident of Maricopa County, Arizona.

5. Defendant PMC has at all time relevant to this matter been a Delaware corporation doing business in Arizona, and an employer with over 500 employees.

6. Defendant PMC provides HVAC service throughout Arizona, including Maricopa County, where Plaintiff often worked.

7. Defendant County is located in Arizona.

8. Defendant Wood has at all times relevant to this matter been a resident of Maricopa County, Arizona, acting on behalf of his employer, Defendant County as a Maintenance Manager.

**JURISDICTION AND VENUE**

9. This Court has personal and subject matter jurisdiction over the parties and issues in this Complain, pursuant to 28 U.S.C. §1331.

10. Venue is proper in this Court, pursuant to 28 U.S.C. §1391(b), because the acts, events, or omissions giving rise to Plaintiff's claims occurred in whole, or in part, in Maricopa County, Arizona.

**FACTUAL BACKGROUND**

11. On or about May 15, 2018, Plaintiff began his employment for Defendant PMC.

12. Plaintiff's last position was HVAC Service Technician.

- 2 -

13. Defendant PMC's workforce primarily consists of Caucasian males.

14. Plaintiff was the only Hispanic in Defendant PMC's Service Department.

15. Plaintiff's performance was always satisfactory.

16. Sometime around March or April of 2019, Plaintiff began experiencing a pattern and culture of discrimination.

17. Plaintiff first experienced discrimination by Bonnie Begay ("Ms. Begay") a Caucasian employee of Defendant PMC, who worked as a Dispatcher or Administrative Manager, and who regularly assigned Plaintiff's work.

18. On or about March/April 2019, Ms. Begay refused Plaintiff's request for certain work-related training but authorized the training for other similarly situated Caucasian employees.

19. Although Plaintiff complained to Ms. Begay and other supervisors and managers of Defendant PMC, Plaintiff's complaints were ignored and he was never provided an explanation for the discriminatory treatment.

20. Ms. Begay began making derogatory comments to Plaintiff that criticized his technical skills.

21. Ms. Begay made derogatory comments suggesting that Plaintiff could not perform jobs requiring technical skills because Plaintiff is Hispanic/Latino.

22. When Plaintiff complained to Ms. Begay about unfavorable treatment she often responded with derogatory comments, such as but not limited to, "You can do the work you are being assigned or you can wait outside of Home Depot like your brothers" or "You can do the work, or go home, or go to Home Depot".

23. Ms. Begay began discriminating/retaliating against Plaintiff by, among other things, (1) assigning Plaintiff unfavorable work assignments that involved more manual labor and less technical skills compared to other job assignments and/or required Plaintiff to travel to remote work locations around Arizona (*e.g.*, Tucson, Prescott, Lake Havasu), (2) leaving Plaintiff assigned to these sites for extended periods of time, and (3) assigning Plaintiff less work resulting in loss of earnings or less earnings compared to

Hernandez Law Firm, PLC
5330 N. 12th St.
Phoenix, Arizona 85014
602.753.2933

similarly situated employees.

24. On more than one occasion Plaintiff reported Ms. Begay's conduct and inappropriate comments to supervisors and managers of Defendant PMC. Plaintiff's complaints were consistently ignored and dismissed.

25. On or about June 24, 2019, Plaintiff was given an assignment to diagnose and repair Service Room Equipment at a Justice Court Facility of Defendant County in downtown Phoenix.

26. After diagnosing the problem Plaintiff attended a meeting with several employees of Defendant County, including Maintenance Manager Defendant Wood.

27. During the meeting Plaintiff was attempting to provide recommendations for how to avoid similar problems in the future, a regular and standard service.

28. While Plaintiff was sitting down, Defendant Wood stood up, leaned over the table towards Plaintiff, and started pounding the table and screaming offensive and derogatory comments within inches of Plaintiff's face. Plaintiff even felt several drops of spit on his face coming from Defendant Wood during the tirade.

29. Among other things, Defendant Wood yelled comments such as but not limited to "Fuck you, you don't know shit…You think you are going to come in here and tell me what to do… Look at how you look… Do you even understand English… You probably can't even read...You feeling me… How do you like that…." Defendant Wood's tirade lasted several minutes. Defendant Wood repeated his comments to another coworker that joined the meeting and started laughing and taunting Plaintiff. Defendant Wood stopped only after several other individuals (presumably other employees of Defendant County) looked into the room to see what was happening.

30. Plaintiff remained sitting during the entire tirade, speechless and shocked. He asked if the meeting was over and left the room.

31. After the meeting another employee of Defendant County who was in the meeting (Xavier, Last Name Unknown) commented to Plaintiff that Defendant Wood's words and conduct were derogatory and "racist" and that he (Xavier) thought Defendant

Wood was going to hit Plaintiff during the tirade.

32. Though Plaintiff was able to maintain composure, Plaintiff suffered an anxiety attack as he was leaving the worksite.

33. Plaintiff promptly notified supervisors and managers of Defendant PMC regarding the incident, including Mr. Steve Kallen.

34. On a call later that day with supervisors and managers of Defendant PMC, including Mr. Kallen, as well as Defendant Wood and Xavier, Defendant Wood and Xavier acknowledged and corroborated Plaintiff's version of what transpired at the meeting.

35. At Plaintiff's request Mr. Kallen agreed Plaintiff would not be sent to any other jobs for Defendant County. Plaintiff was instructed by Mr. Kallen to alert Ms. Begay about the agreement.

36. When Plaintiff attempted to inform Ms. Begay of this decision, Ms. Begay cut Plaintiff off stating, "I'm up to speed."

37. On July 1, 2019, Ms. Begay told Plaintiff that he was being assigned to perform work for Defendant County. Despite Plaintiff's effort to remind Ms. Begay regarding the prior incident and Mr. Kallen's directive, Ms. Begay ordered Plaintiff work for Defendant County, stating that there was no other work and that Plaintiff could accept the work for Defendant County or he could chose not to work and not get paid.

38. Threatened with the loss of work, and believing that he could be terminated for refusing the work assignment, Plaintiff proceeded to the worksite of Defendant County.

39. At the worksite, Plaintiff was subjected to further racially motivated harassment and humiliation by employees of Defendant County who witnessed or had knowledge of the incident with Defendant Wood the week prior.

40. That same day or shortly thereafter, Plaintiff met with supervisors and managers of Defendant PMC, including Mr. Kallen, and complained of Ms. Begay's continued unfair and discriminatory treatment, her refusal to follow Mr. Kallen's orders,

and her assignment requiring Plaintiff work for Defendant County.

41. Within days or a week after Plaintiff's complaint regarding Ms. Begay and the second incident involving employees of Defendant County, Plaintiff attended a meeting with Defendant PMC's supervisors and managers, including Mr. Kallen. Rather than acknowledge or address Plaintiff's complaints, Defendant PMC's supervisors and managers expressed supposed concerns regarding Plaintiff's competence and performance and that his complaints were the result of Plaintiff's "poor attitude".

42. This criticism regarding Plaintiff's performance and "poor attitude" was squarely inconsistent with Plaintiff's prior performance reviews, commendations and positive feedback Plaintiff received during his employment from several managers and clients, and his performance in several company-wide competitions among and between similarly situated employees.

43. In or around August/September 2018 Plaintiff received a positive performance review and a $2.00 per hour pay increase. In December 2018 Plaintiff received a bonus and Mr. Kallen told him he was doing an "amazing job."

44. Unable to cope with the unabated discrimination, retaliation, and harassment, Plaintiff felt compelled to resign his employment and submitted a resignation letter on July 17, 2019.

45. Plaintiff's last day of employment was on July 19, 2019.

46. In the weeks and months prior to his termination, Plaintiff complained to supervisors and managers of Defendant PMC about discrimination and unfavorable treatment, including but not limited to, providing unfavorable work assignments and work schedules, and generally providing him with unfavorable terms and conditions of employment compared to similarly situated non-Hispanic employees

47. Based upon the foregoing, on or around July 24, 2019, Plaintiff filed an administrative charge with the Arizona Civil Right Division of the Attorney General's Office ("ACRD") alleging race/national origin discrimination, and retaliation, Charge No. CRD-2019-0518 ("ACRD Charge").

48. On or around July 24, 2019, Plaintiff filed an administrative charge with the Equal Employment Opportunity Commission ("EEOC") alleging race/national origin discrimination, and retaliation, Charge No. 540-2019-04164 ("EEOC Charge").

49. No more than 90 days have passed since Plaintiff received his Notice of Right to Sue.

## FIRST CAUSE OF ACTION

## Title VII-Discrimination Based on Race and National Origin

## Against Defendant PMC

50. Plaintiff incorporates by reference the preceding paragraphs of the Complaint as if specifically set forth herein.

51. As a Mexican-American male, Plaintiff is a member of a protected class.

52. Despite Ms. Begay's criticism, Plaintiff was qualified for his position.

53. Upon information and belief, Plaintiff was subjected to less favorable treatment than similarly situated coworkers because of his race, national origin, and/or ancestry, including but not limited to, heightened scrutiny, constant criticism and subjecting him to unfavorable working conditions compared to similarly situated coworkers who engaged in the same or similar conduct.

54. Defendants maintained and implemented unlawful discriminatory practices and, by the use of facially neutral employment practices and on other occasions, by the use of excessively subjective standards for selection of those to be promoted, demoted, discharged, or disciplined, caused adverse and discriminatory impact on Hispanic employees, including Plaintiff.

55. As a direct and proximate result of Defendants' unlawful employment practices, Plaintiff has suffered damages, including but not limited to, lost wages, benefits, and other pecuniary losses.  In addition, he has and will continue to suffer emotional distress, sleeplessness, depression, nervousness, a pounding chest,  loss of focus and concentration, pain and suffering, inconvenience, mental anguish, embarrassment, frustration, humiliation, and the loss of enjoyment of life.

56. The unlawful employment practices described herein were willful, wanton, malicious, and in reckless disregard of Plaintiff's rights and he is entitled to punitive damages in an amount to be determined at trial.

**SECOND CAUSE OF ACTION**

**Title VII-Hostile Work Environment**

**Against Defendant PMC**

57. Plaintiff incorporates by reference the preceding paragraphs of the Complaint as if specifically set forth herein.

58. During the course of Plaintiff's employment, Plaintiff was subjected to harassment in violation of Title VII.

59. Upon information and belief, Defendant knew or should have known that Plaintiff was being subjected to derogatory and inappropriate behavior by its employees, including but not limited to, Ms. Begay, and failed to take necessary measures to prevent such misconduct.

60. The hostile work environment Plaintiff suffered was sufficiently severe and pervasive so as to interfere with Plaintiff's work.

61. The hostile work environment Plaintiff endured was sufficiently severe and pervasive so as to create an intimidating, hostile, and offensive environment.

62. Defendants, through their supervisors, managers, and other agents, failed to adequately supervise, control, discipline, and/or otherwise penalize employees who engaged in unlawful discriminatory or offensive behavior.

63. Defendants, through their supervisors, managers, and other agents, failed to take all reasonable and necessary steps to eliminate unlawful harassment and discrimination from the workplace, and to prevent it from occurring in the future.

64. As a direct and proximate result of Defendants' unlawful employment practices, Plaintiff has suffered damages, including but not limited to, lost wages, benefits, and other pecuniary losses. In addition, he has and will continue to suffer emotional distress, sleeplessness, depression, loss of focus and concentration, pain and suffering,

Hernandez Law Firm, PLC
5330 N. 12th St.
Phoenix, Arizona 85014
602.753.2933

inconvenience, mental anguish, embarrassment, frustration, humiliation, and the loss of enjoyment of life.

65. The unlawful employment practices described herein were willful, wanton, malicious, and in reckless disregard of Plaintiff's rights and he is entitled to punitive damages in an amount to be determined at trial.

### THIRD CAUSE OF ACTION
### Title VII-Retaliation
### Against Defendant PMC

66. Plaintiff incorporates by reference the preceding paragraphs of the Complaint as if specifically set forth herein.

67. During the course of Plaintiff's employment with Defendant PMC, Plaintiff was retaliated against in violation of Title VII and subjected to less favorable terms and conditions of employment than similarly situated employees because he complained about unlawful discrimination and harassment.

68. As a direct and proximate result of Defendant's unlawful employment practices, Plaintiff has suffered damages, including but not limited to, lost wages, benefits, and other pecuniary losses. In addition, he has and will continue to suffer emotional distress, sleeplessness, depression, loss of focus and concentration, pain and suffering, inconvenience, mental anguish, embarrassment, frustration, humiliation, and the loss of enjoyment of life.

69. The unlawful employment practices described herein were willful, wanton, malicious, and in reckless disregard of Plaintiff's rights and he is entitled to punitive damages in an amount to be determined at trial.

### FOURTH CAUSE OF ACTION
### §1981-Discrimination Based on Race and/or Ancestry
### Against All Defendants

70. Plaintiff incorporates by reference the preceding paragraphs in the Complaint as if specifically set forth herein.

71. Upon information and belief, Defendant PMC subjected Plaintiff to less favorable treatment than similarly situated coworkers because of his race, national origin, and/or ancestry, including but not limited to, heightened scrutiny, constant criticism and subjecting him to more severe discipline compared to similarly situated coworkers who engaged in the same or similar conduct.

72. Defendant PMC maintained and implemented unlawful discriminatory practices and, by the use of facially neutral employment practices and on other occasions, by the use of excessively subjective standards for selection of those to be promoted, demoted, discharged, or disciplined, caused adverse and discriminatory impact on Hispanic employees, including Plaintiff.

73. Defendant Wood and Defendant County discriminated against Plaintiff because of his race, national origin, and/or ancestry, when Defendant Wood berated Plaintiff with racist and derogatory statements during a meeting in June 2019.

74. The unlawful acts or omissions of Defendant Wood and Defendant County unlawful conduct interfered and negatively impacted Plaintiff's employment with Defendant PMC.

75. As a direct and proximate result of Defendants' unlawful employment practices, Plaintiff has suffered damages, including but not limited to, lost wages, benefits, and other pecuniary losses.  In addition, he has and will continue to suffer emotional distress, sleeplessness, depression, loss of focus and concentration, pain and suffering, inconvenience, mental anguish, embarrassment, frustration, humiliation, and the loss of enjoyment of life.

76. The unlawful employment practices described herein were willful, wanton, malicious, and in reckless disregard of Plaintiff's rights and he is entitled to punitive damages in an amount to be determined at trial.

///

///

///

## FIFTH CAUSE OF ACTION
## §1981-Hostile Work Environment
## Against Defendant PMC and Defendant County

77. Plaintiff incorporates by reference the preceding paragraphs of the Complaint as if specifically set forth herein.

78. During the course of Plaintiff's employment with Defendants, Plaintiff was subject to a hostile work environment in violation of §1981.

79. Upon information and belief, Defendants knew or should have known that Plaintiff was being subjected to derogatory and inappropriate behavior by their employees, including but not limited to, Ms. Begay and Defendant Wood, and failed to take necessary measures to prevent such misconduct.

80. The hostile work environment Plaintiff suffered was sufficiently severe and pervasive so as to interfere with Plaintiff's work.

81. The hostile work environment Plaintiff suffered was sufficiently severe and pervasive so as to create an intimidating, hostile, and offensive working environment.

82. Defendants, through their supervisors, managers, and other agents, failed to adequately supervise, control, discipline, and/or otherwise penalize employees who engaged in unlawful discriminatory or offensive behavior.

83. Defendants, through their supervisors, managers, and other agents, failed to take all reasonable and necessary steps to eliminate unlawful harassment and discrimination from the workplace, and to prevent it from occurring in the future.

84. As a direct and proximate result of Defendants' unlawful employment practices, Plaintiff has suffered damages, including but not limited to, lost wages, benefits, and other pecuniary losses. In addition, he has and will continue to suffer emotional distress, sleeplessness, depression, loss of focus and concentration, pain and suffering, inconvenience, mental anguish, embarrassment, frustration, humiliation, and the loss of enjoyment of life.

85. The unlawful employment practices described herein were willful, wanton,

malicious, and in reckless disregard of Plaintiff's rights and he is entitled to punitive damages in an amount to be determined at trial.

## SIXTH CAUSE OF ACTION
## §1981-Retaliation
## Against All Defendants

86. Plaintiff incorporates by reference the preceding paragraphs of the Complaint as if specifically set forth herein.

87. During the course of Plaintiff's employment with Defendant PMC, Plaintiff was retaliated against in violation of §1981 and subjected to less favorable terms and conditions of employment than similarly situated employees because he complained about unlawful discrimination and harassment.

88. Upon information and belief, Defendant Wood and Defendant County retaliated against Plaintiff by interfering with and/or negatively influencing Plaintiff's employment relationship with Defendant PMC because he complained about unlawful discrimination and harassment.

89. As a direct and proximate result of Defendants' unlawful employment practices, Plaintiff has suffered damages, including but not limited to, lost wages, benefits, and other pecuniary losses.  In addition, he has and will continue to suffer emotional distress, sleeplessness, depression, loss of focus and concentration, pain and suffering, inconvenience, mental anguish, embarrassment, frustration, humiliation, and the loss of enjoyment of life.

90. The unlawful employment practices described herein were willful, wanton, malicious, and in reckless disregard of Plaintiff's rights and he is entitled to punitive damages in an amount to be determined at trial.

## SEVENTH CAUSE OF ACTION
## 42. U.S.C. §1983 – Violation of Civil Rights
## Against Defendant County and Defendant Wood

91. Plaintiff incorporates by reference the preceding paragraphs of the

Complaint as if specifically set forth herein.

92. At all times material hereto Defendant Wood acted within the scope of his employment with Defendant County.

93. On June 24, 2019, Plaintiff was berated and subjected to racial discrimination and harassment by the Defendant County's Maintenance Manager, Defendant Wood.

94. Though his conduct Defendant Wood intended to cause Plaintiff harm, having reason to know or consciously disregarding a substantial risk that his conduct might significantly injure the rights of Plaintiff.

95. On July 1, 2019, Plaintiff was subjected to further discrimination and harassment by Defendant County's employees.

96. Upon information and belief, the acts Defendant Wood on June 24, 2019, and other employees of Defendant County on July 1, 2019, were caused by, or were consistent with, or performed pursuant to policies, practices, and/or customs of Defendant County.

97. Defendants' wrongful acts and omissions have had, and will continue to have, an extremely detrimental impact on Plaintiff, and his damages are significant.

98. Defendant County, through its supervisors, managers, and other agents, failed to adequately supervise, control, discipline, and/or otherwise penalize employees who engaged in unlawful discriminatory or offensive behavior.

99. Defendant County, through its supervisors, managers, and other agents, failed to take all reasonable and necessary steps to eliminate unlawful harassment and discrimination from the workplace, and to prevent it from occurring in the future.

100. Had Defendant Maricopa diligently exercised its duties to instruct, supervise, control, and discipline, on a continuing basis, this could have been prevented.

101. The unlawful acts or omissions of Defendant Wood and Defendant County interfered and negatively impacted Plaintiff's employment with Defendant PMC.

102. As a direct and proximate result of Defendants' wrongful acts and

omissions, Plaintiff has sustained injuries and damages to be proven at trial, including but not limited to, lost wages, benefits, and other pecuniary losses. In addition, he has and will continue to suffer emotional distress, sleeplessness, depression, loss of focus and concentration, pain and suffering, inconvenience, mental anguish, embarrassment, frustration, humiliation, and the loss of enjoyment of life.

103. The unlawful employment practices described herein were willful, wanton, malicious, and in reckless disregard of Plaintiff's rights and he is entitled to punitive damages in an amount to be determined at trial.

**WHEREFORE**, Plaintiff prays for relief against Defendants, jointly and severally, as follows:

A. Award Plaintiff back pay, front pay, and any other available compensatory damages, as may be determined at trial;

B. Award Plaintiff general damages for him emotional distress, sleeplessness, depression, loss of focus and concentration, pain and suffering, inconvenience, mental anguish, embarrassment, frustration, humiliation, and the loss of enjoyment of life, as may be determined at trial;

C. Award Plaintiff punitive damages as may be determined at trial;

D. Order Defendants to pay reasonable attorney's fees and costs;

E. Order Defendants to pay pre-judgment interest on all amounts for which pre-judgment interest is legally allowable, at the highest lawful rate;

F. Order Defendants to pay post-judgment interest at the highest lawful rate for all amounts, including attorney fees, awarded against Defendant; and

G. Order all other relief, whether legal, equitable or injunctive, as may be necessitated to effectuate full relief to Plaintiff.

///
///
///
///

**JURY DEMAND**

Plaintiff requests a jury trial.

Respectfully submitted this 19th May 2020.

                        Hernandez Law Firm, PLC

                        By:  /s/ Isaac P. Hernandez
                              Isaac P. Hernandez
                              Attorney for Plaintiff

Hernandez Law Firm, PLC
5330 N. 12th St.
Phoenix, Arizona 85014
602.753.2933